Caldwell, I.
Tbis is a petition for dower, filed by Elizabeth Firestone, wbo claims as tbe widow of Nicholas ^Firestone, deceased. Tbe facts out of which tbe controversy arises are these. In 1833, Nicholas Firestone was tbe owner of tbe lands in which dower is claimed. In that year be entered into an agreement in writing with bis son Henry, tbe defendant, by which it was agreed between tbe parties that Henry should pay bis father $240 in money, that bis father should deed to him tbe land, and that be, Henry, should execute to bis father a release of all claim that be might have to bis father’s estate. At tbe time of tbe agreement there was no improvement on tbe land, except about five acres that bad been-cleared, and a-log bouse that had been put up on tbe place, but which was in an unfinished state. In 1833, shortly after tbe agreement was made, Henry paid tbe $240 and bad it receipted on tbe contract, and entered on tbe premises, and has claimed and used them as bis own, and has made extensive and valuable inrprovements thereon.
In 1835, Nicholas Firestone made out and duly acknowledged a deed of this property to Henry; in tbe same year Henry made out and acknowledged in due form a release and acquittance to bis father of all claim that be might have on bis estate: but these deeds Were not delivered until 1841, when they were reciprocally delivered and placed on tbe record. Tbe land, at tbe time tbe contract *363 was made in 1833, was valued at ®2,240; two thousand dollars of it was a gift from the father to the son, specifically agreed between-them to be in full of the son’s share of the father’s estate.
Nicholas Firestone died in 1847. Henry has set up no claim to his estate, but has explicitly disavowed any such claim. Nicholas-Firestone was married to the petitioner in 1838. Previous to their marriage, what purports to be an antenuptial agreement between them was drawn up, in which it is stipulated that the petitioner, then Elizabeth Hoover, on the death of Nicholas Firestone, should receive out of his estate, in lieu of dower, the sum of three hundred dollars; that she should retain all her personal property as her own, and, in case of her death, it should go to her heirs. This agreement, although bearing date the day before the marriage, was really *not executed, as appears from the evidence, until the day after the marriage. The reason given for not executing the instrument before the marriage is, that the parties were married on Sunday, and Nicholas Firestone preferred not to have it executed on that day. Now, the question arises, whether, under this state-of facts, the complainant is entitled to dower in these premises.
Although the policy of the law has always been to preserve with great care the right of dower, when it has once attached to the property of the husband, yet it has never gone so far as to attach the right of dower to property other than the husband’s. Whilst it is very reasonable that, in case of the death of the husband, a support for the wife should be provided out of his estate, it is neither reasonable nor legal that such support should be provided out of the property and rights of others. In order to avoid this, it is necessary thattheright of dower should attach subject to all the equities that may exist against the title of the husband at the time that it attaches.
The right of dower arises alone upon the title of the husband,, and can not be higher or more extensive than it.
If the legal title be in the husband and the equitable title in another, at the time of the marriage, no right of dower attaches, as-against such equitable title.
In 1833, when Nicholas Firestone agreed with his son to convey this land, he had complete control over the title to the property ;. no right of dower had attached to it; he could sell it to his son, or give it to him, and such sale or gift would carry a clear and absolute title. He could also agree to convey, and such agreement *364 would be binding on him. Long before the marriage of petitioner with Nicholas Firestone, he had agreed, on certain considerations, partly good and partly valuable, to convey this property absolutely to the defendant. Both parties to the contract at all times acknowledged its obligation and their willingness to perform their respective parts of the contract, and each did perform his part,— Henry by paying the money and giving the release, *and his father by making the conveyance; and, although the title was not completed until after the marriage of the grantor with petitioner, yet the conveyance, when made, related to the title as it stood in 1833, when the contract for the conveyance was made. Any right of dower that the petitioner acquired on her marriage in 1838 was subject to the previously acquired right to. the title obtained by the defendant.
It is said, however, that the release given by Henry, which formed .a part of the contract of 1833, was not binding upon him, upon the ground that a release made in anticipation of heirship is not binding. Now, although there appears to be a theoretical inconsistency in a person releasing a right that has not accrued, yet there are many reasons in favor of making a contract like the pres•ent valid. In this instance, the son needed the property to commence the business of his life; the father could spare it, and on a fair calculation it was agreed that a certain amount of it would be a fair portion of the father’s property. This amount would be of more actual benefit to the son than a much larger amount, or than perhaps any amount, at a future and uncertain time. But by this •conveyance, the father would deprive himself and the rest of his family of the use of this property, and whilst his other children might, by the arrangement, derive the exclusive benefit of his future acquisitions, they would, at the same time, be subjected to have their shares diminished by any future losses of the father. It would appear, then, very reasonable that this son, having in advance received a fair share of his father’s property absolutely, -should release any future claim, and leave the father untrammeled in his provision for his other children. But, if this contract of release could not have been specifically enforced, still the money consideration was paid by the defendant, and everything contracted for by him had been performed to the satisfaction of the father, who made the conveyance, and, if the defendant could havo claimed a distributive share of his father’s estate, and had done *365 so, this property, in that case, would, have been held to *be an advancement of so much, for which, although he would have-had to account, yet it would not have affected his title. But there is another ground which we think conclusive, whatever objections might have been raised by the defendant to carrying out the release according to its terms. No such objection has been taken,, but the whole contract, in both letter and spirit, has been .carried out by the parties.
In addition to letting his son have this farm, Nicholas Firestone had two objects: one was, that he was to receive a certain sum of money; and the other was, that his son, in consideration of the conveyance, should release all future claim on his property. The son has paid the money; he has given the release; and, since the death, of the father, he has made it good by abandoning all claim to the estate. So that Nicholas Firestone has obtained all that he contemplated by the contract; the parties have specifically executed it; there is nothing in it contrary to justice and good morals, and we think no person has any right to ask that it should be in anyway interfered with.
The bill will therefore be dismissed.